IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| Major Michael D. Mori, U.S. Marine Corps )<br>Marine Corps Air Station Miramar )<br>San Diego, California )<br>)<br>    *Plaintiff*, )<br>)<br>    v. )<br>)<br>Department of the Navy )<br>The Pentagon )<br>Washington, DC 20350, )<br>)<br>    *Defendant*. ) | Case Number: |

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action to compel the Department of the Navy to refer a Marine Corps officer's record to a special selection board ("SSB") in accordance with 10 U.S.C. § 628 and Secretary of the Navy ("Secretary") Instruction ("SECNAVINST") 1401.1B.

### Jurisdiction and Venue

2. This Court has jurisdiction under 10 U.S.C. § 628(g)(1), the Fifth Amendment to the Constitution, and 28 U.S.C. § 1331.

3. Venue for this claim is proper in this district pursuant to 28 U.S.C. § 1391.

### Parties

4. Plaintiff, Michael D. Mori, is an active-duty regular Major in the United States Marine Corps.

5. Defendant, Department of the Navy, is an agency within the meaning of the Administrative Procedure Act ("APA").

## Facts

6.    Major Mori has served 16 years in the Marine Corps, both as enlisted Marine and as a Commissioned officer. Major Mori's recent assignments include Senior Defense Counsel, Naval Legal Services Office Yokosuka, Japan and Chief Prosecutor, Marine Corps Base Hawaii.

7.    In August 2003, the Marine Corps ordered Major Mori to rotate from his position as Chief Prosecutor, Marine Corps Base Hawaii, to serve as a defense counsel attached to the Office of Military Commissions. As part of his new billet, in November 2003, Major Mori was ordered to represent David Hicks, a detainee held by the United States at the detention center in Guantanamo Bay, Cuba.

8.    In June 2004, David Hicks became the first detainee charged by the military commission system created to try the detainees held at Guantanamo Bay.

9.    In media statements defending the military commission system, the government asserted that the system was fair, in part, because of the quality and professionalism of the defense counsel assigned to represent the detainees. At one point, the government characterized the defense counsel assigned as "top-notch."

10.   As a lawyer, Major Mori's conduct in representing his client was governed the Massachusetts Rules of Professional Conduct, Judge Advocate General Instruction 5803.1C, and the Uniform Code of Military Justice Article 38, all of which required Major Mori to zealously represent his client's interests using all legal and ethical means.

11.   Major Mori's, as well as other civilian and military defense attorneys' efforts to challenge the military commission process, including the United States Supreme Court case of *Rasul v. Rumsfeld*, 542 U.S. 507 (2004), in which Major Mori's client was a party, attracted a high level of media and public interest. Therefore, Major Mori's representation of his client, and his efforts

to challenge the military commission process, were widely reported in the media beginning in January 2004. These reports included radio, television, and internet reports, as well as numerous print media articles. Many of those reports and articles were reprinted and published to Marine Corps officers through Department of Defense public affairs news distribution channels, including, among others, the Early Bird news summary.

12. In October, 2005, Major Mori was considered for promotion by the Fiscal Year 2007 Active Duty United States Marine Corps Lieutenant Colonel Selection Board ("Selection Board"). Major Mori was denied promotion to Lieutenant Colonel.

13. During the time Major Mori was assigned as a defense counsel to the military commissions, despite public statements about the professionalism of the "top-notch" military defense counsel involved, all three of the defense counsel assigned from the Department of the Navy, which includes the Marine Corps, were denied promotion.

14. The Uniform Code of Military Justice, Article 37, prohibits retaliation against defense counsel for actions taken in defending their assigned clients.

16. Major Mori's Selection Board was made up of 20 non-lawyer Marine Corps officers and one lawyer Marine Corps officer.

17. Many of the officers on the Selection Board were personally involved in the war on terror and had friends or troops killed by terrorists. Major Mori was assigned to defend a client whom the President and the Secretary of Defense had publicly since January 2002 called not only a terrorist, but a "killer" and the "worst of the worst."

18. Major Mori's actions in defense of his client were well known in the Marine Corps officer community, and those actions, particularly his public criticism of the military commission process and disagreement with the government over the due process that should be afforded to

his client, an accused terrorist, were widely regarded by the Marine Corps officer community as disloyal and inappropriate for a Marine Corps officer.

19.     The Department of the Navy was aware of the substantial media reporting on Major Mori's defense of his client and that those reports had been republished in a publication likely to be read by the Marine Corps officers on the selection board.  The Department of the Navy knew, or should have known, that those reports would create a negative perception of Major Mori as a result of his actions on behalf of his client.

20.     Department of Defense Instruction ("DODINST") 1320.14 requires the Secretary of the Navy to provide the Selection Board with written "[g]uidelines to ensure the consideration of all eligible officers without prejudice or partiality."

21.     No written guidance was given to the Selection Board to counteract the prejudice against Major Mori that resulted from his representation of David Hicks.

22.     No written guidance was given to the Selection Board regarding the role of a defense counsel in the military commission system or the extent that Major Mori's actions taken defending his client could or should be considered by the Selection Board.

23.     Officers on the Selection Board had personal involvement with previous terrorist attacks and the ongoing Global War on Terror that would have made their impartiality toward someone defending a person labeled a terrorist by the President of the United States highly unlikely.  The Department of the Navy was aware of these facts.  Despite this knowledge, on information and belief, the Secretary of the Navy provided no guidance, written or otherwise, to the Selection Board designed to ensure that that Major Mori was considered "without prejudice or partiality."

24.     The composition of Major Mori's Selection Board was particularly unfair.  Major General Ennis, the senior member on the Selection Board, was serving as the Deputy Director

for Human Intelligence, Defense Intelligence Agency during Major Mori's promotion board and previously served as the Director of Intelligence for Headquarters Marine Corps. Major Mori's client had been interrogated by both Marine Corps intelligence personnel and DIA personnel some of whom fell directly under Major General Ennis's command. Much of the criticism of the military commissions focused on obtaining and use of evidence acquired through improper interrogation techniques. As such, as part of his assignment as defense counsel, Major Mori was in a directly adversarial position with the senior member of his Selection Board.

25. Some other examples of officers on Major Mori's selection board include Colonel Ronald Johnson and Colonel Stephen Mikolaski. Colonel Johnson has served as the Commander of the 24th Marine Expeditionary Unit in Iraq and over successive tours lost 54 men in Iraq. Colonel Johnson has stated that he keeps a list of those names in his pocket as a daily reminder about the importance of the war on terror. Colonel Mikolaski served in Lebanon during the time the Marine Barracks was bombed by terrorists. Colonel Mikolaski assisted in pulling the bodies from the ruble after the blast. During the same time period that he sat on Major Mori's selection board, Colonel Mikolaski attended a memorial service honoring the Marines killed during that incident, one of the most emotionally charged events in Marine Corps history.

26.     Another member of Major Mori's Selection Board was predisposed to bias against Major Mori because of an adversarial relationship resulting from a prior assignment of Major Mori's as a defense counsel. Brigadier General Angela Salinas served as a convening authority, when she was a Lieutenant Colonel, in a case where Major Mori represented a member of her command at a court-martial. Then Lieutenant Colonel Salinas personally and in writing pre-determined the guilt of her Marine and had been challenged on her fairness by the accused Marine who was represented by Major Mori. The court-martial acquitted the Marine. Because of the potential for

unfairness inherent in such adversarial roles, officers on selection boards are expected to recuse themselves from the deliberations concerning officers to whom they had been directly adverse. Where such recusal does not occur, an SSB is warranted.

27. The Selection Board was materially unfair because the Selection Board acted contrary to law by considering and retaliating against Major Mori for his zealous representation of his client.

28. The Selection Board was materially unfair, contrary to law, and involved material error because the Secretary failed to give appropriate guidance to the Selection Board that they could not consider Major Mori's actions in defense of his client against him in considering his record for promotion.

29. The Selection Board was materially unfair, contrary to law, and involved material error because the senior member of the Selection Board was in a directly adversarial position with Major Mori, and on information and belief, did not recuse himself from any consideration of, or deliberations about, the decision whether to select Major Mori for promotion.

30. The Selection Board was materially unfair, contrary to law, and involved material error because another member of the Selection Board, Brigadier General Salinas, had been in a directly adversarial position with Major Mori, and on information and belief, did not recuse herself from any consideration of, or deliberations about, the decision whether to select Major Mori for promotion.

31. A special selection board ("SSB") is a selection board designed to consider the record of an officer where promotion was denied by a selection board that considered the officer's record in an unfair manner.

32. On June 6, 2006, Major Mori filed a request that described the reasons the Selection Board was materially unfair, contrary to law, and involved material error, and requested that his record be referred to a SSB in accordance with 10 U.S.C. § 628 and SECNAVINST 1401.1B.

33. On March 8, 2007, Major Mori received a letter from the Department of the Navy denying his request to have his record referred to an SSB. In a Memorandum drafted by the Commandant of the Marine Corps and signed by the Secretary, the rationale given for denial is that Major Mori failed "to provide convincing evidence to support his claim."

34. To support the contention that Major Mori failed "to provide convincing evidence to support his claim," the Memorandum notes that 10 U.S.C. § 613a, the written guidance given to the Selection Board, and DODINST 1320.14 all direct that the deliberations of the Selection Board not be disclosed to any person not a member of the Selection Board. The letter does not note the fact that the listed statutes and instructions do not bar the Secretary of the Navy, or his designee, from conducting interviews of selection board members to ensure that a selection board was conducted fairly.

35. On information and belief, the Secretary of the Navy did not interview any of the members of Major Mori's Selection Board to investigate Major Mori's claims. On information and belief, the Secretary of the Navy did not designate anyone to interview any of the members of Major Mori's Selection Board to investigate the claims.

36. The Memorandum denying Major Mori's request for a SSB does not refer to any factual investigation of Major Mori's claims.

37. The Memorandum does not address at all Major Mori's complaint that Brigadier General Salinas, a member of his Selection Board, was biased against him because of an adversarial relationship resulting from his representation of a Marine under her command.

38. The letter from the Commandant of the Marine Corps informing Major Mori that the Secretary of the Navy had denied Major Mori's request for a SSB is dated February 13, 2007. The Secretary of the Navy signed the Memorandum denying Major Mori's request on February 15, 2007.

39. The Memorandum signed by the Secretary incorrectly characterizes Major Mori's request for an SSB as being "based on the actions of the board being contrary to law."

40. In fact, Major Mori's request was based on the actions of the board being contrary to law *and* tainted by material error.

41. Allegations of material error must be adjudicated by the Secretary of the Navy under a "more likely than not" standard.

## Cause of Action

42. The averments of ¶¶ 1 – 41 are incorporated herein by reference.

43. The Secretary of the Navy's decision to deny Major Mori's request to refer his record to a SSB was arbitrary, capricious, not based on substantial evidence, a result of material error, and otherwise contrary to law because Major Mori's Selection Board was materially unfair, acted contrary to law, and was tainted by material error.

44. The Secretary of the Navy's decision to deny Major Mori's request to refer his record to a SSB was arbitrary, capricious, not based on substantial evidence, a result of material error, and otherwise contrary to law because the Secretary signed the Memorandum approving the Commandant of the Marine Corps' recommendation to deny Major Mori's request two days after the Commandant signed the denial letter.

45. The Secretary of the Navy's decision to deny Major Mori's request to refer his record to a SSB was arbitrary, capricious, not based on substantial evidence, a result of material error, and

otherwise contrary to law because the Secretary only analyzed Major Mori's claims under the "contrary to law" standard and failed to analyze his claims under the "material error" standard.

46. The Secretary of the Navy's decision to deny Major Mori's request to refer his record to a SSB was arbitrary, capricious, not based on substantial evidence, a result of material error, and otherwise contrary to law because the Secretary applied a "convincing evidence" standard that is improper for either a "contrary to law" or a "material error" claim.

47. The Secretary of the Navy's decision to deny Major Mori's request to refer his record to a SSB was arbitrary, capricious, not based on substantial evidence, a result of material error, and otherwise contrary to law because the Secretary failed to address a significant issue raised in Major Mori's request—that a member of his board was biased against him based on a previous adversarial relationship that resulted from Major Mori's obtaining the acquittal of a Marine that she had already determined was guilty of a crime.

48. The Secretary of the Navy's decision to deny Major Mori's request to refer his record to a SSB was arbitrary, capricious, not based on substantial evidence, a result of material error, and otherwise contrary to law within the meaning of 10 U.S.C. § 628(g)(1) because the Secretary did not conduct a factual investigation into Major Mori's claims and thus had no basis on which to make his decision. Instead, the Secretary explicitly relied on a provision that precludes anyone except the Secretary, or his designee, from asking the Selection Board members what happened at Major Mori's Selection Board.

**Prayer for Relief**

WHEREFORE, having no adequate remedy at law, Plaintiff respectfully requests that this Court:

   A. set aside the Secretary's determination not to convene an SSB in plaintiff's case as provided in 10 U.S.C. § 628(g)(1)(A);

   B. remand the case to the Secretary with instructions to provide for consideration of Plaintiff's record by an SSB, as provided in 10 U.S.C. § 628(g)(1)(B); and

   C. grant such other and further equitable relief as the court may deem just and proper, including, but not limited to, payment of Plaintiff's reasonable costs and attorney's fees.

Respectfully submitted:

WILLIAMS & CONNOLLY LLP

By: _____
Edward J. Bennett (DC Bar No. 457112)
Daniel P. Shanahan (DC Bar No. 490516)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Counsel for Plaintiff*

November 30, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Major Michael D. Mori, U.S. Marine Corps
Marine Corps Air Station Miramar
San Diego, California

## DEFENDANTS

Department of the Navy
The Pentagon
Washington, DC 20350

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **11001**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Edward J. Bennett (DC Bar No. 457112)
Daniel P. Shanahan (DC Bar No. 490516)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

ATTORNEYS (IF KNOWN)

Department of Justice

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ● C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Action to compel the Secretary of the Navy to refer Plaintiff's record to a Special Selection Board pursuant to 10 U.S.C. 628.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:  YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 11/30/2007   SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.